

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed August 28, 2013**

_____
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TEQUILLA MARIE LAW, | § | CASE NO. 13-30388-SGJ-7 |
| | § | |
| D E B T O R. | § | |

**MEMORANDUM OPINION AND ORDER SUPPLEMENTING AND CLARIFYING THE JULY 2, 2013 ORDER GRANTING MOTION OF DEBTOR FOR SANCTIONS AGAINST ALLY FINANCIAL, INC. FOR VIOLATION OF THE AUTOMATIC STAY (CLARIFYING INJUNCTIVE PROVISIONS OF SUCH ORDER)**

**I. Introduction**

Before this court was a contested matter concerning a motion for sanctions [DE #20] filed by an individual Chapter 7 debtor, Tequilla Marie Lomax Law (the "Debtor"), pursuant to Section 362(k) of the Bankruptcy Code, against a vehicle lender, Ally Financial, Inc. ("Ally"), for an alleged violation of the

Debtor's automatic stay in her bankruptcy case. Ally's alleged stay violation was the act of sending a postpetition, pre-discharge letter directly to the Debtor (and not also to Debtor's counsel), approximately two-and-a-half months after her bankruptcy case was filed, and after Ally received several notices of the bankruptcy case, which letter notified the Debtor in repeated fashion of the "AMOUNT NOW DUE" and "LAST DAY FOR PAYMENT" on the Debtor's account, and indicated where the Debtor should send payments to cure her defaults. As it so happened, the Debtor had filed a Statement of Intention, pursuant to section 521(a)(2) of the Bankruptcy Code, on the first day of her bankruptcy case, indicating her intention to ***surrender*** the vehicle to Ally, and also disclosed conspicuously in her Bankruptcy Schedules B and D that the vehicle in question was in the possession of her estranged husband—who was a co-debtor on the indebtedness to Ally, but was not a joint debtor in the Chapter 7 case. The Debtor and her counsel believed that, under the circumstances, the letter from Ally was an improper attempt to collect on a prepetition claim against the Debtor, since the automatic stay had terminated ***as to the vehicle (but not to the Debtor)***, pursuant to section 521(a)(6) of the Bankruptcy Code (*i.e.,* the dangling paragraph thereunder), and there was nothing

preventing Ally from repossessing the vehicle.[1] The court has ultimately concluded that, while Ally belatedly offered some plausible explanations for its letter, Ally's letter did, indeed, "cross the line" into violating section 362(a)(6) of the Bankruptcy Code,[2] and warranted sanctions pursuant to Section 362(k).[3] Just as harassment can be subtle in other areas of the law, so, too, can it be in the universe of automatic stay violations. What follows are the court's findings and conclusions in support of the court's ruling. Hopefully, this will serve as a cautionary tale. The court also issues this written Memorandum Opinion and Order to clarify and supplement

---

[1] As later discussed herein, section 521(a)(6) and the so-called "dangling" paragraph thereafter provide, collectively, that a chapter 7 debtor may not retain personal property secured by a lien if she has not entered into a reaffirmation agreement, pursuant to section 524(c), or redeemed such property, pursuant to section 722, within 45 days after the first meeting of creditors in her case and, in such event, the automatic stay is terminated with regard to such personal property.

[2] Section 362(a)(6), of course, prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

[3] Section 362(k) provides that an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). The court is also entering an injunction in this matter, pursuant to its authority under section 105(a) of the Bankruptcy Code. 11 U.S.C. § 105(a) (the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

its earlier Order on July 2, 2013 that, among other things, enjoined Ally from sending in the future any letter to any debtor in this District similar to what was sent to the Debtor in the case at bar.

## II. Jurisdiction

Bankruptcy subject matter jurisdiction existed in this contested matter pursuant to 28 U.S.C. § 1334(b). This bankruptcy court had authority to exercise the bankruptcy subject matter jurisdiction in the contested matter, pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. Additionally, statutory "core" matters were involved in this contested matter, as contemplated by 28 U.S.C. §§ 157(b)(2)(A), (G) and (O). Sections 105, 362, and 521 of the Bankruptcy Code were the substantive statutory authority most germane to this matter. This Memorandum Opinion encompasses the court's findings of facts and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate, a finding of fact shall be construed as a conclusion of law and *vice versa*.

## III. Facts

The Debtor filed a Chapter 7 bankruptcy case on January 29, 2013 (the "Petition Date"). The Debtor ultimately received a discharge on April 29, 2013.

The Debtor's case was a fairly ordinary Chapter 7 case. The Debtor listed among her obligations a home mortgage, some car debt, and various unsecured debt including medical debt and student loans. The Debtor was unemployed during her bankruptcy case and receiving government assistance (including social security disability payments and food stamps). The Debtor is undergoing a divorce. The Debtor has two children in her household. The Debtor was represented in her bankruptcy case *pro bono* by an attorney with Legal Aid of Northwest Texas. The Debtor testified that her highest level of education has been one semester of community college.

One of the debts the Debtor hoped to have discharged in her bankruptcy case (and ultimately did have discharged) was a debt associated with a 2008 Chevrolet Silverado 1500 extended cab work truck (the "Truck"). The Debtor was a co-obligor on the indebtedness associated with the Truck (it was purchased in year 2008), but the Truck was used by and was in the possession of her estranged husband (a co-debtor, not a joint debtor). When the Debtor filed bankruptcy, she listed the Truck on her Schedule B listing of personal property as follows:

> **"2008 Chevrolet Silverado 1500 Extended Cab Work Truck; Truck is not in debtor's possession. Truck is in possession of debtor's estranged husband, Dextes Law. [Value listed: $12,384]"**

The Debtor did not claim the Truck on her Schedule C as exempt.

In fact, as mentioned earlier, the Debtor filed a Statement of Intention, on the first day of her case, indicating her intention to surrender the Truck. 11 U.S.C. § 521(a)(2). The Debtor also listed the Truck on her Schedule D listing of secured debt, showing Ally with a loan to the Debtor and her estranged husband secured by the Truck, with a claim owing of $12,516. The Debtor listed Ally at five different addresses on her Schedule D (and also on her Creditor Mailing Matrix), and also listed a law firm that had represented Ally prepetition in a lawsuit filed against the Debtor and her estranged husband. ***There is no dispute that Ally received prompt and fullsome notice of the Debtor's bankruptcy filing***.

The Debtor filed amended Schedules and Statement of Financial Affairs on April 17, 2013, that made minor changes, including listing the divorce action that was filed against her by her estranged husband.

Ally never filed a Motion to Lift Stay or asked for a Reaffirmation Agreement in the case. 11 U.S.C. §§ 362(d); 524. However, Ally internally (*i.e.,* in-house; not through an outside lawyer) sent to the Debtor directly (and not to her lawyer) a letter on April 15, 2013. The April 15, 2013 Letter (herein so called) starts out:

**"Dear Tequilla M. Lomax:**

**April 28, 2013 is the LAST DAY FOR PAYMENT.**

>**$6,157.23 is the AMOUNT NOW DUE.**
>
>**You are late in making your payment(s). If you pay the AMOUNT NOW DUE (above) by the LAST DAY FOR PAYMENT (above), you may continue with your contract."**
>
>**[The language that is in all capital letters appears as such in the actual letter.]**

Then finally, in the fifth sentence of the April 15, 2013 Letter, there is some acknowledgment of a bankruptcy case being filed with the following language:

>**"If you do not pay by this date, we may exercise our rights under the law as limited by your bankruptcy. This means that you will not have to make any more payments on this account to the extent your obligation is discharged in bankruptcy. However, if you do not pay the amounts owed on this account, we may take the vehicle. _If we take the vehicle_, you won't have to pay anything more on this account to the extent your obligation is discharged in bankruptcy." (Underlining and italics added.)**

Thereafter, there is no more mention of bankruptcy in the April 15, 2013 Letter. But, rather, there is more all-capitalized language about amounts due and making payments. For example:

>**"Remember that another payment of $425.64 becomes due on APRIL 30, 2013. That amount is not included in the AMOUNT NOW DUE shown above.**
>
>**If you have not done so, please send certified funds for the amount above to the Payment Processing Center at [address listed].**
>
>**We may have alternatives to help you resolve your situation. . . . "**

The April 15, 2013 Letter was not signed by any human being

but, rather, concluded with:  "Sincerely, Ally Financial, 866-447-6583."

As noted earlier (and explained further herein), Ally has offered some plausible explanations for the April 15, 2013 Letter.  And, as noted above, there are, in fact, references to the bankruptcy mid-way through the letter and references to the possibility that the obligation to Ally may be discharged in the bankruptcy case and this may limit Ally's rights.  However, the court, as noted, believes there is harassment of the Debtor here that is subtle and troubling (especially when one considers the very bad fact that the Truck was in the possession of an estranged husband and the Debtor had notified Ally of that, and that she intended to surrender her interest in the Truck).  And the court is left with the uncomfortable concern for how many other debtors have received similar letters and sent in payments to Ally, thinking that they better do it to avoid trouble with Ally.  The court is left with the uncomfortable concern that this may have been the precise business strategy of Ally—*i.e.,* send the letter and maybe the Debtor will send in a payment.  While certainly a careful reader and/or a sophisticated debtor would hopefully understand the qualifications in the letter regarding the possibility of a bankruptcy discharge, the Debtor in the case at bar (like many other debtors) is certainly not accustomed to conversing in bankruptcy terms of art, nor is she sophisticated

in legal nuance. In fact, "AMOUNT NOW DUE" appears three times in all-capital letters in the letter, and "LAST DAY FOR PAYMENT" appears twice. This language seems much more attention-grabbing and easy for the average human being to understand than three references to the possibility of a bankruptcy discharge in the middle of the letter.

A. *Rulings at the June 3, 2013 Hearing.*

Only the Debtor appeared and testified at the first date set for a hearing on this matter (on June 3, 2013). Ally's counsel appeared, but no representative from Ally did.[4] Ally's counsel contested no facts, but merely argued that the April 15, 2013 Letter did not cross the line into an automatic stay violation.

The Debtor testified that, when she received the April 15, 2013 Letter, she was confused and anxious. At one point, the letter states that "$6,157.23 is the AMOUNT NOW DUE." This number seemed to bear no relation to anything. The Debtor's balance on the Truck was $12,516 on the Petition Date. Why would Ally communicate this $6,157.23 amount (or anything allegedly being due from the Debtor) when the Debtor had filed a Statement of Intention that she would surrender the vehicle and, ***moreover, 45 days had passed since the First Meeting of Creditors and, thus, Ally had its in rem rights to pick up the vehicle***? *See* 11

---

[4] Word to the wise: if one is accused of violating the automatic stay and is subject to a request for sanctions, one should generally plan to attend the court hearing and be prepared to testify.

U.S.C. § 521(a)(6) (dangling paragraph thereafter).[5]  To the Debtor and her counsel, it looked like Ally was attempting to try to pressure the Debtor into making more payments on the Truck. Perhaps Ally would prefer this approach over trying to obtain the Truck from her estranged husband?

The Debtor in this case knew to call her lawyer.  Her lawyer asked for sanctions.  In the face of unrefuted testimony from the Debtor and no appearance by any Ally witness, the court awarded the Debtor, pursuant to section 362(k):  (a) $1,000 in actual damages; (b) $10,000 in punitive damages; and (c) reimbursement of attorneys' fees to Legal Aid of Northwest Texas (which, of course, it had not actually charged to the Debtor) of $5,880, which seemed to be a fair and reasonable estimate of the time and labor that its *pro bono* attorney put into this matter (14.7 hours at $400 per hour for a 20+ year lawyer).  The court also enjoined Ally, pursuant to section 105(a) of the Bankruptcy Code, from sending further letters in the style and format of the April 15,

---

[5] Section 521(a)(6) of the Bankruptcy Code, first, prohibits an individual debtor in a chapter 7 case from retaining possession of personal property as to which a creditor has an allowed claim for the purchase price, secured in whole or in part by an interest in such personal property, unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either enters into a reaffirmation agreement, pursuant to section 524 of the Bankruptcy Code, or redeems such property, pursuant to section 722 of the Bankruptcy Code.  Then, a dangling paragraph thereafter states that, if the debtor fails to so act within the 45-day period referred to in section 521(a)(6), the automatic stay of section 362(a) is terminated with respect to the personal property and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law.

2013 Letter to any other debtors in the Northern District of Texas and continued the hearing on this matter so that the court could hear testimony from an Ally representative regarding what Ally's typical practice is with regard to sending letters to debtors such as the Debtor.  In other words, does Ally always automatically send this type of letter out to all debtors—no matter what chapter they are in, regardless of what their statement of intention reflects, and regardless of whether they have an attorney?

B.  *Testimony from Ally at the Continued Hearing on August 26, 2013.*

Prior to the continued hearing on this matter, on July 31, 2013, Ally submitted an explanation letter to the court (the "Post-Hearing Ally Explanation Letter").  In the Post-Hearing Ally Explanation Letter, Ally referred to the April 15, 2013 Letter as a "Cure Notice."  Ally does not believe the form of letter violates the automatic stay because of the references to the debtor's bankruptcy—referring to this as "bankruptcy disclaimer" language.  ***Ally represented that the purpose of the letter is two fold:  (a) it acts as a notice of default under the contract and notice that Ally will accelerate and exercise its contractual and state law rights once the automatic stay is terminated; and (b) it advises the customer who has not reaffirmed, redeemed or paid off the obligation what is necessary***

11

***if the customer wishes to retain his or her vehicle despite the bankruptcy. Ally states that it is its practice in the Northern District of Texas to send this form of letter to every debtor regardless of chapter based on the following criteria: (i) the automatic stay has terminated and/or customer has received his or her discharge (note, the Debtor in the case at bar had not yet received her discharge and the automatic stay was still in place as to her personally, although not as to the Truck);[6] (ii) the debtor's account is more than 50 days past due; and (iii) Ally is not in possession of the vehicle***.

At the August 26, 2013 continued hearing, Ally testified (through an "Operations Manager" and "Bankruptcy Specialist") that Ally started sending the form of the April 15, 2013 Letter out to debtors in year 2008. The witness stated that, before the 2005 amendments to the Bankruptcy Code,[7] Ally would usually file motions to lift stay in individual Chapter 7 bankruptcy cases when debtors did not reaffirm or redeem their vehicles. However, Ally stopped doing this on a regular basis thereafter, when

---

[6] The Debtor received her discharge on April 29, 2013 in this case. Thus, the automatic stay as to her **generally** ceased to exist (and her dischargeable debts were discharged) on this date. See 11 U.S.C. § 362(c)(2)(C). The Debtor's first meeting of creditors was February 26, 2013. Thus, the automatic stay **as to the Truck** ceased to exist 45 days thereafter, on April 12, 2013. See 11 U.S.C. § 521(a)(6) (dangling paragraph thereafter) and 362(c)(1).

[7] Bankruptcy Abuse and Prevention Consumer Protection Act of 2005 ("BAPCPA").

12

BAPCPA was enacted making clear that the automatic stay terminated 45 days after a debtor's first meeting of creditors whenever a debtor had not carried out its intentions as stated in the Statement of Intentions. Ally typically only files motions to lift stay now in the cases involving "high end" vehicles or if a debtor files bankruptcy in a district where Ally can get a very fast order lifting stay (such as within 7 days; apparently that is the case in the Northern District of Illinois). It is, essentially, a cost-benefit analysis for Ally. However, Ally became concerned that it should perhaps send some form of communication to debtors before simply repossessing their cars—and some states' laws might even require that (although Texas does not). Thus, Ally started sending out the form of the April 15, 2013 Letter sometime in 2008. Ally has had some debtors and their lawyers question the letter, but no requests for sanctions until now.

*C. Analysis and Injunction*

So what is a car lender to do? This was, essentially, the question posed by Ally, when it requested the court, in connection with the August 26, 2013 continued hearing, to clarify the scope of the injunctive provisions of the court's July 2, 2013 Order. The injunctive provisions simply stated that "Ally is enjoined from sending any further letters in the style and format of the April 15th Letter referenced above to any debtor

13

who has filed a bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of Texas."

This is not that complicated. Ally should not be sending letters to debtors, who are represented by counsel, and who have filed Statements of Intention to surrender their vehicles, with words screaming (in all capital letters) "AMOUNT NOW DUE" and "LAST DAY FOR PAYMENT." Even the so-called bankruptcy disclaimer language (which is not in all capital letters) is somewhat ambiguous to a debtor like the one in the case-at-bar: "If we take the vehicle, you won't have to pay anything more on this account to the extent your obligations is discharged in bankruptcy." What if Ally (for whatever reason) does *not* take the vehicle (for example, because Ally cannot locate it through the debtor's estranged husband, or because the vehicle is wrecked, or because Ally just does not want the vehicle)? The language might be understood by a non-lawyer debtor to mean that the debtor would still have to continue to pay on the vehicle—and maybe that is precisely why the letter was being sent.

The Bankruptcy Code is really, in this court's view, not ambiguous in this area. After BAPCPA, it became clear (if it was not already) that a debtor in Chapter 7 has three options for dealing with her personal property, such as a car, that is subject to a lender's lien: (a) she can *reaffirm* the indebtedness, under section 524 of the Bankruptcy Code; (b) she

14

can **redeem** the vehicle by paying the lender the amount of its secured claim, pursuant to section 722 of the Bankruptcy Code; or (c) she can **surrender** the vehicle, pursuant to section 521(a)(2) and (a)(6).  Formerly, there was a debate among some courts about whether there was a fourth option—sometimes referred to as a "ride through" or "pay and drive" option—pursuant to which a chapter 7 debtor might simply retain personal property/collateral and make future contractual payments without reaffirming.  In other words, a debtor might be able to keep a car and pay on it post-discharge and the lender might not repossess the car.[8]  But if that ever was a genuine legal option, BAPCPA seemed to eliminate it with new language making clear that the automatic stay will lift if a chapter 7 debtor does not timely file a Statement of Intent to Redeem or Reaffirm and timely act on the intended action.  11 U.S.C. § 362(h) & 521(a)(6) (especially dangling paragraph).

Conceivably, the "ride through" or "pay and drive" option may still be utilized in practice—among willing debtors and lenders outside the purview of the bankruptcy courts (particularly where a debtor has entered into a reaffirmation

---

[8] *See, e.g., Daimler Chrysler Fin. Servs. Am., LLC v. Jones (In re Jones)*, 591 F.3d 308, 311-12 (4th Cir. 2010); *Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104, 1109 (9th Cir. 2009).  Note that the Fifth Circuit **never** recognized this "ride through" option. *See Johnson v. Sun Fin. Co. (In re Johnson)*, 89 F.3d 249, 252 (5th Cir. 1996).

15

agreement and the bankruptcy court has declined to approve it in an "undue hardship" type of situation).[9]  But section 521(a)(6) makes it clear that there are no guarantees with regard to this strategy; if a debtor fails to act on his statement of intention within the 45-day period after the first meeting of creditors (by either reaffirming, redeeming, or surrendering), the stay is terminated with respect to the personal property and the creditor can take whatever action as is permitted by applicable nonbankruptcy law.

What Ally seemed to fail to recognize—in offering its plausible explanations for its April 15, 2013 Letter and asking "what's a lender to do"—is that many car lenders can and do file motions to lift stay during chapter 7 cases, or motions to confirm absence of stay, pursuant to section 362(j), after the 45-day period of section 521 has run.  This way, vehicle lenders can be sure that they are unfettered in exercising their state law rights with regard to the vehicles in question.  Ally apparently only likes to pursue that option with expensive cars or in districts where the order can be obtained extremely quickly.  This is a cost-benefit analysis that, at least in the case at bar, has proved risky.  But the court does not mean to suggest that any letter (absent a motion) would violate the stay.

---

[9] *See, e.g., In re Baker*, 390 B.R. 524, 530 (Bankr. D. Del. 2008); *In re Chim*, 381 B.R. 191, 198-200 (Bankr. D. Md. 2008); *In re Husain*, 364 B.R. 211, 218-220 (Bankr. E.D. Va. 2007).

16

The problems with the April 15, 2013 Letter in the case at bar are that: (a) it went to the Debtor only and not her attorney, while she still had an open case and no discharge yet; (b) Ally had received fullsome notice of the Debtor's bankruptcy case; (c) the Debtor filed a timely Statement of Intention indicating she desired to surrender the Truck; (d) the Debtor conspicuously stated in her Schedules that she did not have possession of the Truck—that it was in the possession of her estranged husband (and the Debtor listed her divorce action in her Statement of Financial Affairs); (e) the time had passed where the automatic stay no longer applied to the Vehicle and Ally was free to exercise *in rem* relief as to it; (f) there is nothing in Texas law that required Ally to send to the Debtor any notice of Ally's intention to repossess the Truck at this point in time (moreover, the April 15, 2013 Letter was not even in that category of such a notice—it was, at best, a notice telling the Debtor how much she should pay and where to send payments if she wanted to "continue with [her] contract"; and (g) the letter screamed in all capital letters three times "AMOUNT NOW DUE" and two times "LAST DAY FOR PAYMENT" while at the same time having more subtle references to Ally's rights possibly being limited by her bankruptcy. If the letter had at least been sent to Debtor **and Debtor's attorney,** and had stated that Ally considered the stay now terminated pursuant to section 521(a)(6), and that Ally soon intended to

exercise its rights to repossess the vehicle, and made clear that no deficiency claim was being sought from Debtor (and, perhaps, even inviting a phone call at a specific number if the Debtor, by chance, had any wish to make any consensual arrangements with regard to the repossession of the vehicle), this would have made all the difference in the world.

The court believes the April 15, 2013 Letter is confusing, at best, and, likely suggests an ulterior motive on the part of Ally to propose a no-rules "ride through" and perhaps make some extra money off the Debtor—despite her expressed intent to surrender the vehicle. In the case of certain debtors, such as this particular Debtor, there is arguably a much worse potential consequence, where a debtor thinks "Ally cannot repossess the Truck from my estranged husband and so now maybe I am going to have to pay them." This is just all unacceptable.

The Bankruptcy Code envisions that there are limited scenarios when an individual debtor shall remain personally liable on a debt secured by personal property post-bankruptcy: (a) if a reaffirmation agreement is properly entered into pursuant to section 524; or (b) if there is an exception to the dischargeability of a debt pursuant to section 523 or an overall denial of discharge pursuant to section 727. In the case of either scenario, there is a detailed process that is mandated by

the Bankruptcy Code that contemplates due process for parties and court oversight to some degree. Ally's April 15, 2013 Letter, as stated earlier, crosses the line into being a stay violation. It looked and smelled like a collection attempt or other attempt to put pressure on a Debtor who quite plainly expressed an intent to surrender the Truck—and who, quite plainly, was still in a bankruptcy case and represented by counsel. And, to this bankruptcy court, it also looked like an improper circumvention of the Bankruptcy Code (*i.e.,* Ally could have offered a reaffirmation agreement and it did not).

Wherefore, this court's earlier ruling imposing various monetary damages stands. And, for clarification purposes, it is hereby

**ORDERED** that Ally is enjoined from sending out any letter that is substantially in the form of the April 15, 2013 Letter to any debtor who is or has been in a Chapter 7 bankruptcy case before this court; and it is further

**ORDERED** that any communication that is sent by Ally directly to any Chapter 7 debtor (and not copied to debtor's counsel) that uses words such as "AMOUNT NOW DUE" and "LAST DAY FOR PAYMENT," when a Chapter 7 debtor has not expressed an intent to reaffirm his indebtedness with Ally or, in fact, executed a reaffirmation

agreement with Ally, shall be deemed to be "substantially in the form of the April 15, 2013 Letter."[10]

* * * * END OF MEMORANDUM OPINION AND ORDER * * * *

---

[10] It should be noted that there is a "Standing Order Concerning All Chapter 13 Cases" (General Order 2010-01) in the United States Bankruptcy Court for the Northern District of Texas, dated August 13, 2010, that provides, at paragraph 15, that "Unless the Debtor or Debtor's Counsel has notified the creditor to discontinue sending post-petition statements, a creditor will be deemed not to have violated the automatic stay by voluntarily continuing to send the Debtor the usual and customary monthly statements concerning the Debtor's account." Such Order also specifies what a creditor that has a lien on real property may send postpetition. Nothing about this Memorandum Opinion and Order contradicts the Chapter 13 Standing Order. Context is everything. "Usual and customary monthly statements" are quite different from Ally's April 15, 2013 Letter, and Chapter 13 (envisioning repayment plans) is quite different from Chapter 7.